## CALDWELL v. HARRISON.

1. Where several persons are deputed to represent another in some business transaction, such as the sale of property, &c., it seems that all of them should join in executing the authority; but the interest of the principal

as gathered from the words in which the power is conferred, may control the rule of interpretation. In respect, however, to public agencies, an authority executed by a majority will be held obligatory and a good execution.

2. An authority to commissioners to make the plan of a bridge across a stream at a place where a road passes, to contract for its erection, and to examine and report whether it is completed according to the plan, is *quasi* a public agency, and if the majority of them make the report contemplated, their action is quite as obligatory upon those concerned, as if it had received the sanction of all the commissioners.

3. Where a party subscribes a paper, stipulating to pay a certain sum of money, if a bridge (which was to be let out and built according to a plan to be adopted by certain commissioners,) should be completed by a day designated, and reported by the commissinners to be done and finished according to contract, to make his undertaking absolute, it should at least appear that the work was completed according to the contract, or so reported by a majority of the commissioners; and the mere indorsement on the contract signed by a majority, that the bridge had been received, is not sufficient, where it appears that the builder had not complied with his contract.

Writ of Error to the County Court of Butler.

THIS cause was instituted before a justice of the peace, and removed by appeal to the county court, where a judgment was rendered in favor of the plaintiff below. The case on which the court below acted, and now here for revision, is stated at length in the record, and may be thus condensed. A paper subscribed by the defendant, with the mark and figures indicating ten dollars placed opposite his name, was given in evidence. That paper, so far as material, is as follows: "We the subscribers promise to pay the amounts we have set opposite our names, for the purpose of building a bridge across Pigeon creek, where the old bridge fell in near Wm Mercer's, upon the following conditions, viz: Wm Wright, John Smith, Wm Mercer, Richard Williams, M. M. Weaver, and Daniel B. Shines are appointed commissioners, who are to make out a plan of said bridge, and are to let out the building of the same under said plan to the lowest bidder, and when said bridge is completed, and reported by said committee to be done and finished according to contract, then we

Caldwell v. Harrison.

hereby bind ourselves to pay the amount subscribed as above stated : Provided the same is done by the 1st day of December, 1844." Which instrument of writing was signed by the defendant, with the amount of ten dollars set opposite his name in figures. Plaintiff further offered a writing, which set forth the plan of the bridge referred to, as prepared by all the commissioners, except Richard Williams (who never acted upon that or any subsequent occasion with the committee.)

The building of the bridge was publicly let out by the commissioners under the plan adopted by them, and the contract obtained by the plaintiff as the lowest bidder. A bridge was built by the plaintiff, at the place designated, but altogether different from the requirement of the plan, which the acting commissioners unanimously refused to receive ; but with the exception of Wm. Wright agreed, that, if the plaintiff would do certain specified work and make some alterations, and warrant the bridge should stand for a given number of years, then they would accept it. This proposition the plaintiff agreed to, and the commissioners separated.

On a subsequent day, a majority of commissioners signified to the plaintiff their willingness to receive the bridge, if certain additional work was done on it ; and pursuant thereto, the plaintiff performed such additional work by the first of December, 1844. An indorsement was made on the writing above set out, which is as follows : " We the commissioners have received the within named bridge; (signed) John Smith, Madison Weaver, Daniel B. Shines, William Mercer." Smith was present, and assented to the same ; Weaver was not present, but told Smith to act for him, who accordingly had his name signed to the indorsement ; Shines was not present, but wrote to Smith to act for him, which he did, and caused his name to be subscribed ; Mercer was not present, but his name was signed by his authority ; Wright had been applied to, but refused his sanction to the proceeding.

The bridge thus received was materially variant from the plan under which the contract was made—all the witnesses examined, except the commissioner Smith, testified that the bridge was worth less than that undertaken by plaintiff to be

built. All with the exception noticed, stating it would be worth from ninety to one hundred and thirty, instead of one hundred and thirty-nine dollars and fifty cents, the price at which it was bid off, and would have been worth. The question is, has the condition on which the defendant undertook to pay his subscription been performed, and is he bound to pay the same.

. T. J. JUDGE and N. COOK for the plaintiffs in error, cited Paley on Ag. 148-9-50, 164, 166, 303 ; Story on Ag. 115, 116, note 1, 10, 15, 136, 157, 165, 166 ; Chit. on Con. 567, 569, 570 ; 4 Ala. Rep. 340.

WATTS, for the defendant in error, cited Story on Ag. 14, 22, 45 note 4, 156, 157 ; 1 B. & P. Rep. 236 ; 6 Johns. R. 39 ; 3 T. Rep. 592 ; 6 Cow. Rep. 354 ; 4 Ala. Rep. 622.

COLLIER, C. J.—The contract sought to be enforced in this case, may be thus stated, viz : on condition that certain persons would, as commissioners, make out the plan of a bridge, and let out the building thereof, pursuant to the plan, the defendant below promised to pay ten dollars to defray the cost of its erection, when the same was completed and reported by the commissioners to be finished according to the stipulation of the undertaker ; *Provided*, all this was done by the first day of December, 1844.

If a party depute several persons to represent him in some business transaction, such as the sale of property, &c. one of them cannot separately execute the authority. It has even been said that the rule upon this point is so strict, that an authority to three, *jointly* and *severally*, cannot be executed by *two*, but one or all must act; unless the intent of the principal, as gathered from all the words employed, is sufficiently clear to control the rule of interpretation. But this doctrine is only said to be true in relation to private agencies ; for in public agencies an authority executed by a majority will be held obligatory, and a good execution of it. [See Story on Agency, 45, and note 4.] In the case before us, the authority conferred upon the commissioners to make the plan of a bridge, to contract for its execution, and to examine and re-

Caldwell v. Harrison.

port whether it was completed according to the plan, was *quasi*, a public agency ; and if the majority of them made the report contemplated by the authority and contract, their action was quite as obligatory upon those concerned, as if it had been the transaction of all the commissioners.

But to make the defendant's promise absolute, and to charge him on his subscription, it is necessary that the bridge should be completed according to contract, or at least so reported by a majority of the commissioners.   We will not say that it should be both finished in that manner, and so reported to be, but certainly one fact or the other must be established ; for the defendant's promise is made upon one or both of these conditions.

The evidence showed that the bridge, which was in fact built, (when the additional work required by the commissioners was completed,) did not conform to the plan which they adopted, and according to which it was let out.   And the testimony of all the witnesses but one, (who was a commissioner,) explicitly affirms that it was less valuable than the bridge undertaken to be erected by the plaintiff.

The indorsement on the contract, that the bridge has been received by the commissioners, if sustained by extrinsic proof that the plaintiff had performed his undertaking, would perhaps be a sufficient report within the contemplation of the parties.   But in opposition to the evidence, it cannot be intended from the mere fact that the commissioners received it, that it was finished pursuant to the plan.

In cases in which the amount in controversy is as small as in the present, it has been said that the decision must be according to equity and good conscience.   By this we are to understand, that the rules of strict law are not to be applied when these interfere to prevent a recovery, or exclude a defence which a court of equity would sustain.   But if the condition on which the defendant promised to pay, has not been substantially performed, he is not liable.

The ruling of the circuit court is not supported by the evidence—its judgment is consequently reversed, and the cause remanded, if the defendant in error desires it.